IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

SHANNON DALY,

      Plaintiff,

v.

CITY OF FOUNTAIN,

      Defendant.

## COMPLAINT

COMES NOW Plaintiff, Shannon Daly, by and through counsel, Cornish & Dell'Olio, P.C., and for her Complaint against the Defendant, City of Fountain, states as follows:

### Introduction

1. This is an action brought against the City of Fountain for disability discrimination in violation of her rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* and Section 504 of the Rehabilitation Act of 1973 ("Rehab Act"), 29 U.S.C. § 701, *et seq.,* for gender discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, and for disability and gender discrimination in violation of the Colorado Anti-Discrimination Act ("CADA"), C.R.S. § 24-34-402.

### Jurisdiction

2. Jurisdiction is proper in the U.S. District Court for the District of Colorado pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 12117(a).  By virtue of the Court's original jurisdiction over Ms. Daly's ADA, Rehab Act, and Title VII claims, this Court has supplemental jurisdiction over her state law claims pursuant to 28 U.S.C. § 1367.

## Venue

3. Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b)(2) as the actions giving rise to this action occurred in the State of Colorado.

## Parties

4. Shannon Daly resides in Colorado Springs, Colorado.

5. Ms. Daly worked for Defendant City of Fountain in Fountain, Colorado.

6. The City of Fountain is a Colorado city that operates the Fountain Police Department.

7. The City of Fountain is a recipient of federal financial assistance.

## Factual Allegations

8. Shannon Daly is a woman.

9. Ms. Daly has been employed by the City of Fountain Police Department (hereafter "the Department") since January 2014.

10. From the start of her employment with the Department until September 2018, Ms. Daly worked as a patrol officer.

11. In September 2018, Ms. Daly was promoted to the rank of sergeant.

12. Ms. Daly performed the duties of the sergeant position satisfactorily.

13. Approximately one month after she was promoted to sergeant, Ms. Daly was diagnosed with breast cancer.

14. Cancer, including the breast cancer that Ms. Daly was diagnosed with, is a medical condition that substantially limits the major bodily activity of normal cell growth.

15. Ms. Daly disclosed her cancer diagnosis to the Department in November 2018.

16. In early December 2018, Ms. Daly had a chemotherapy port inserted and was

placed on light duty at work due to her medical condition.

17. At or around the time that Ms. Daly was absent from work for the placement of the chemotherapy port, another Fountain police officer reportedly made a complaint about Ms. Daly to Fountain Police Lieutenant Missy Reynolds.

18. The complaint about Ms. Daly addressed concerns about her interactions and relationship with Fountain Police Officer Jacob Osman while a group of off-duty Fountain Police officers and their spouses and/or significant others went out for drinks at a bar in Colorado Springs on November 17, 2018.

19. Although there were a number of employees of the Department drinking at the bar on November 17, 2018, Ms. Daly was the only employee identified in the complaint.

20. After she received the complaint in December 2018, Lt. Reynolds discussed the situation with Ms. Daly and ultimately told Ms. Daly that she did not believe there were any policy violations.

21. Despite Lt. Reynolds' statement to Ms. Daly that she did not believe that any policy violations took place, the complaint about Ms. Daly was referred to the Department's internal affairs unit for investigation on March 24, 2019.

22. Only Ms. Daly was subject to the internal affairs investigation; neither Mr. Osman nor any of the other Department employees who were present at the bar on November 17, 2018 were investigated.

23. The internal affairs investigation was based on the premise that Ms. Daly was involved in an intimate relationship with a subordinate employee—Mr. Osman.

24. Mr. Osman was not assigned to work for Ms. Daly and did not work in her chain of command.

25. Mr. Osman did not report to Ms. Daly.

26. Ms. Daly did not conduct performance evaluations of Mr. Osman, nor did she provide any assistance or consultation about Mr. Osman's performance evaluations.

27. As Mr. Osman did not work in Ms. Daly's chain of command or report to Ms. Daly, he was not her subordinate.

28. As Ms. Daly did not evaluate Mr. Osman's performance, she was not his supervisor.

29. Mr. Osman was not subjected to any investigation to determine the extent of his relationship with Ms. Daly.

30. Mr. Osman was not investigated or disciplined for his role in the relationship because the City does not prohibit relationships between employees who are not in the same supervisory chain of command.

31. Various Department supervisors, including Lt. Reynolds, Sgt. Gilbertson, Administrator Haley, and Lt. Cristiani told Ms. Daly that she had not violated Department policy.

32. On one occasion during the investigation, Ms. Daly specifically asked Lt. Reynolds what Department policy she was accused of violating to which Lt. Reynolds responded "none."

33. During a conversation Ms. Daly had with Lt. Cristiani about the investigation, Lt. Cristiani told Ms. Daly that she had not committed any policy violations.

34. After Lt. Cristiani told Ms. Daly that she had not committed any policy violations, Lt. Cristiani then told Ms. Daly that she was being investigated because "Chief doesn't like people in the PD dating" or words to that effect.

35. Lt. Cristiani's statement about the Chief not liking people in the Department dating was consistent with a public statement made by Department Chief Heberer in which he expressed his personal objection to adultery and threatened to terminate any employees involved in "adulterous" relationships.

36. It is inconsistent with, and a violation of, Department policies to subject an employee to an internal affairs investigation without specifically identifying the policy the employee allegedly violated.

37. The internal affairs investigation into Ms. Daly and her relationship with Mr. Osman took over two months to complete.

38. The investigation of Ms. Daly was not conducted according to Department policies.

39. In February 2019, Ms. Daly received a positive performance evaluation that indicated she was consistently meeting expectations in all areas of her work performance.

40. While the internal affairs investigation was ongoing, Ms. Daly went on medical leave for surgery related to her cancer.

41. Ms. Daly returned to work from medical leave on June 18, 2019.

42. When Ms. Daly returned to work on June 18, 2019, Chief Heberer immediately placed her on administrative leave.

43. Chief Heberer had made the decision to put Ms. Daly on administrative the day before she returned from medical leave.

44. When Chief Heberer told Ms. Daly that she was being placed on administrative leave, he also told her that the Department had obtained information that made it appear as though she had engaged in inappropriate conduct with a subordinate officer.

45. At the time Chief Heberer told Ms. Daly she was on administrative leave he gave her a memo that stated there were two paths forward: (1) the police department could complete an investigation; or (2) Ms. Daly could resign.

46. Chief Heberer wrote the memo suggesting that Ms. Daly resign while she was on medical leave for surgery related to her cancer.

47. Chief Heberer made the decision to request Ms. Daly's resignation while she was on medical leave for treatment related to her cancer.

48. Chief Heberer made the decision to request Ms. Daly's resignation before the Department's investigation was complete.

49. Ms. Daly refused to resign her position.

50. On August 1, 2019, Ms. Daly was demoted from sergeant to police officer, given a written warning, and placed on a six-month performance plan.

51. The City does not have a policy prohibiting employees from being in relationships when one employee does not supervise the other.

52. The City does not investigate or discipline employees who are in relationships with coworkers.

53. Male employees have not been investigated or disciplined for carrying on relationships with lower ranking female employees.

54. A male sergeant was involved in an intimate relationship with a female subordinate and he was not investigated or disciplined due to the relationship.

55. Subjecting a female employee to investigation and discipline for a relationship with a lower ranking male employee while not investigating more senior male employees for their relationships with lower ranking female employees is evidence of gender discrimination.

56. The City is self-insured for medical benefits for employees.

57. Because the City is self-insured for medical benefits, it is exceptionally cost-conscious with respect to medical expenses for employees with disabilities and serious medical conditions.

58. Under the City's insurance plan, after an employee pays her deductible, the City is responsible to pay the remainder of the cost of the claim until the City's payment reaches the stop-loss amount.

59. Once the stop-loss amount is reached, the City is responsible to pay the full amount of the remainder of the employee's claim from its insurance fund.

60. City employees routinely meet with representatives of the City's insurer to discuss healthcare costs of specific employees.

61. The City's self-insurance arrangement gives the City a financial incentive to create reasons to impose discipline on employees with disabilities in order to drive the employees out and control healthcare costs.

62. The City threatened Ms. Daly with termination, demoted her, and put her on a performance plan because she is a woman and because of her disability, cancer.

### First Cause of Action
### (Rehabilitation Act – Disability Discrimination)

63. Plaintiff realleges all prior paragraphs and incorporates them herein.

64. Defendant knew that Plaintiff suffered from a disability, cancer.

65. Defendant knew that Plaintiff's disabilities caused difficulties with Plaintiff's normal cell growth major bodily function.

66. Defendant regarded Plaintiff as having a disability.

67. Defendant knew that Plaintiff had a record of a disability.

7

68. Defendant demoted Plaintiff on August 1, 2019 because of Plaintiff's disability, because it regarded Plaintiff as having a disability, or because Plaintiff had a record of having a disability.

69. Defendant's acts and omissions violated Plaintiff's rights under the Rehabilitation Act.

70. As a result of Defendant's discriminatory conduct, Plaintiff has suffered damages, including lost wages and compensatory damages, and has incurred attorneys' fees and costs.

## Second Cause of Action
### (Americans with Disabilities Act—Disability Discrimination)

71. Plaintiff realleges all prior paragraphs and incorporates them herein.

72. Defendant knew that Plaintiff suffered from a disability, cancer.

73. Defendant knew that Plaintiff's disabilities caused difficulties with Plaintiff's normal cell growth major bodily function.

74. Defendant regarded Plaintiff as having a disability.

75. Defendant knew that Plaintiff had a record of a disability.

76. Defendant demoted Plaintiff on August 1, 2019 because of Plaintiff's disability, because it regarded Plaintiff as having a disability, or because Plaintiff had a record of having a disability.

77. Defendant's acts and omissions violated Plaintiff's rights under the Americans with Disabilities Act.

78. As a result of Defendant's discriminatory conduct, Plaintiff has suffered damages, including lost wages and compensatory damages, and has incurred attorneys' fees and costs.

## Third Cause of Action
### (Title VII—Gender Discrimination)

79. Plaintiff realleges all prior paragraphs and incorporates them herein.

80. As a woman, Plaintiff is a member of a protected class under Title VII of the Civil Rights Act of 1964, as amended.

81. Defendant treated Plaintiff less favorably than employees who are not women.

82. Plaintiff was subjected to adverse treatment in the terms and conditions of her employment because of her gender, including but not limited to disparate treatment and discriminatory terms and conditions of employment as described above.

83. At all pertinent times, Plaintiff performed the functions of her job competently and was more than qualified for the position she held.

84. Despite Plaintiff's qualifications, Defendant subjected her to discrimination because of her gender.

85. Defendant demoted Plaintiff because of her gender.

86. Defendant's asserted reasons for the employment actions Plaintiff suffered were pretext for illegal gender discrimination.

87. Plaintiff's gender was a motivating factor in Defendant's discrimination against her.

88. As a consequence of Defendant's illegal conduct, Plaintiff has sustained significant injuries, damages, and losses.

### Fourth Cause of Action
### (Colorado Anti-Discrimination Act—Disability Discrimination)

89. Plaintiff realleges all prior paragraphs and incorporates them herein.

90. Defendant knew that Plaintiff suffered from a disability, cancer.

91. Defendant knew that Plaintiff's disabilities caused difficulties with Plaintiff's normal cell growth major bodily function.

92. Defendant regarded Plaintiff as having a disability.

93. Defendant knew that Plaintiff had a record of a disability.

94. Defendant demoted Plaintiff on August 1, 2019 because of Plaintiff's disability, because it regarded Plaintiff as having a disability, or because Plaintiff had a record of having a disability.

95. Defendant's acts and omissions violated Plaintiff's rights under the Colorado Anti-Discrimination Act.

96. As a result of Defendant's discriminatory conduct, Plaintiff has suffered damages, including lost wages and compensatory damages, and has incurred attorneys' fees and costs.

### Fifth Cause of Action
### (Colorado Anti-Discrimination Act—Gender Discrimination)

97. Plaintiff realleges all prior paragraphs and incorporates them herein.

98. As a woman, Plaintiff is a member of a protected class under the Colorado Anti-Discrimination Act.

99. Defendant treated Plaintiff less favorably than employees who are not women.

100. Plaintiff was subjected to adverse treatment in the terms and conditions of her employment because of her gender, including but not limited to disparate treatment and discriminatory terms and conditions of employment as described above.

101. At all pertinent times, Plaintiff performed the functions of her job competently and was more than qualified for the position she held.

102. Despite Plaintiff's qualifications, Defendant subjected her to discrimination because of her gender.

103. Defendant demoted Plaintiff because of her gender.

104. Defendant's asserted reasons for the employment actions Plaintiff suffered were

pretext for illegal gender discrimination.

105. Defendant discriminated against Plaintiff because of her gender.

106. As a consequence of Defendant's illegal conduct, Plaintiff has sustained significant injuries, damages, and losses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

1. A declaration that Defendant discriminated against Plaintiff in violation of the American with Disabilities Act, the Rehabilitation Act, and/or Title VII of the Civil Rights Act;
2. Backpay in amount equal to lost compensation and benefits;
3. Damages for all other monetary losses sustained as a direct result of the violations;
4. Non-pecuniary and compensatory damages, including damages for humiliation, emotional distress, and consequential damages
5. Reinstatement or front pay in lieu thereof;
6. Punitive damages;
7. Nominal damages;
8. Pre- and post- judgment interest at the highest statutory rate;
9. Costs and attorneys' fees pursuant to Fed. R. Civ. P. 54 and as allowed by statute; and
10. All other legal or equitable relief the court deems appropriate.

## DEMAND FOR A JURY TRIAL

Plaintiff demands a jury trial for all issues triable by jury.

Respectfully submitted this 30th day of December, 2020.

CORNISH & DELL'OLIO, P.C.

                                                    s/Ian D. Kalmanowitz
                                                    Ian D. Kalmanowitz, # 32379
                                                    Cornish & Dell'Olio, P.C.
                                                    431 N. Cascade Avenue, Ste. 1
                                                    Colorado Springs, CO 80903
                                                    TEL (719) 475-1204
                                                    FAX (719) 475-1264
                                                    ikalmanowitz@cornishanddellolio.com
                                                    Attorney for Plaintiff

Plaintiff's address:
6689 Wild Indigo Drive
Colorado Springs, CO 80923